**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Suzanne Powers,<br><br>Plaintiff,<br><br>v.<br><br>Caroline's Treasures Incorporated, Ronald D Rutherford, Jr., and Walter Dennis Knight,<br><br>Defendants. | No. CV-17-03923-PHX-SMB<br><br>**ORDER** |

At issue is Defendants' Motion for Summary Judgment (Doc. 43, "Mot."). Plaintiff responded to the motion (Doc. 53, "Resp."), and Defendants replied. (Doc. 60). For the reasons that follow, Defendants' motion is denied in part and granted in part.

**I.    Background**

Suzanne Powers ("Powers" or "Plaintiff") created 56 drawings entitled "Dogs of the West aka Dog Country" in 1997 and 1998. In 2002, Powers entered into an agreement with Caroline Treasure's, Inc. ("CTI") to license these works for use on CTI's products for two years (the "2002 License"). (Resp. at Exh. B). CTI is an Alabama Corporation that retails home items. (Doc. 31 ¶ 64). Defendants Ronald Rutherford ("Rutherford") and Walter Knight ("Knight") are officers of CTI. (Doc. 31 ¶¶ 65–66). The 2002 License included a clause that said the agreement could be renewed in one-year increments if both parties agreed. (Resp. at Exh. B). The 2002 License ended on May 29, 2004.

Nevertheless, after the license expired, the parties stayed in contact and Defendants continued to use Plaintiff's works and their business relationship continued under the same

terms. (Mot. at 4; Resp. at 1). In November 2006, Powers and CTI entered into a new two-year licensing agreement (the "2006 License"). The 2006 License had a same renewal clause as the 2002 License. (Resp. at Exh. D). When the license lapsed in November 2008, CTI continued selling licensed products. (Mot. at 5). In November 2009, Powers contacted CTI requesting a payment for royalties, which CTI paid by check. (*Id.*). In the memo line for that check, it noted it was for royalties from October 2008 to October 2009.

The parties present different characterizations of their business relationship between 2002 and 2009. Defendants argue that it was established practice that they would pay Powers royalties whenever she requested. (Mot. at 3–6). Powers argues this was a constant frustration for her, and she attaches emails from 2003, 2004, and 2007 asking for payment. (Resp. at 9, Exh. E, F, G). In a May 30, 2007, email, Powers wrote, "If you are not going to send me what is owed on a timely basis without me hounding you . . . I wish to terminate our relationship . . . ." (Resp. at Exh. F). A week later, she seems to walk back her demand in another email: "I would like to not have to ask to be paid, that's all. As far as pulling the designs, that is up to you. As long as you don't disappear into the night on me!" (Resp. at Exh. G).

Powers claims she thought the agreement lapsed November 26, 2008, and Defendants would stop selling her works at that point. (Resp. at Declaration of Suzanne Powers, "Powers Decl.," ¶ 14). She further alleges that even though the last check for her royalties went through "Oct. 2009," she thought it was just for October 2008 and November 2008, the last two months of the license agreement. (*Id.* ¶¶ 15–16). She alleges she only found out about the continued use of her images in June 2017 and immediately contacted CTI. (*Id.* ¶ 21). When she contacted CTI at that time, they sent her a check for post-October 2008 royalties. (Mot. at 8, Exh. M-1). She did not deposit the check, because she "decided to look into a lawsuit." (*Id.* at M-1).

Defendants argue that Powers impliedly consented to continuing the license by following the same course of conduct that followed the 2002 License's lapse. Plaintiff contends that she believed their business relationship was over once the 2006 License

ended and Defendants continuing to sell past the expiration date of the 2006 License constitutes breach of contract and copyright infringement. Powers also alleges violations of the Digital Millennium Copyright Act. Pub. L. No. 105-304, 112 Stat. 2860 (1998) (codified in scattered sections of Title 17). Powers alleges she sent all 56 of the copyrighted works to Defendants digitally with her signature and the copyright symbol (©), which constitutes copyright management information ("CMI") under 17 U.S.C. § 1202. (Resp. at 5). When the images were posted online to sell the goods, the signature and copyright symbol were not shown. Defendants say they posted the images as they received them and did not remove a signature or copyright symbol, and they provide website archives from June 2002 through April 2004 and June 2004 through May 2006 that show the images without a signature or copyright symbol on their website and crediting Powers as creating the artwork. (Reply at 2; Doc. 56). Powers notes that when she saw her images replaced with a new background on various websites in June 2017, none of the sites credited her and instead had references to Caroline's Treasures. (Resp. at 6, Exh. H).

Defendants also raise a statute of limitations defense. Defendants believe Powers was on notice that they were continuing to use the images based on their previous business dealings and the royalty check noting it went through October 2009. Thus, any damages that accrued more than three years prior to filing suit are time-barred. Additionally, Defendants believe Knight and Rutherford should be granted summary judgment on the breach of contract claim even if CTI is not, because only the corporate entity is liable. The Court will take each argument in turn.

**II.     Legal Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is any factual issue that might affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record" or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). The court need only consider the cited materials, but it may also consider any other materials in the record. *Id.* 56(c)(3). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If the movant fails to carry its initial burden, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000). If the movant meets its initial responsibility, the burden then shifts to the nonmovant to establish the existence of a genuine issue of material fact. *Id.* at 1103. The nonmovant need not establish a material issue of fact conclusively in its favor, but it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmovant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Liberty Lobby*, 477 U.S. at 247–48. Additionally, the Ninth Circuit "has refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Libberty Lobby, 477 U.S.* at 249–50 (citations omitted). However, in the summary judgment context, the Court believes the nonmovant's evidence, *id.* at 255, and construes all disputed facts in the light most favorable to the nonmoving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004). If "the evidence yields conflicting inferences

[regarding material facts], summary judgment is improper, and the action must proceed to trial." *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002).

**III. Analysis**

1. <u>The DMCA Claim Under 17 U.S.C. § 1202(b)—Removal of CMI</u>

Section 1202(b) states:

No person shall, without the authority of the copyright owner or the law—
(1) intentionally remove or alter any [CMI],
(2) distribute or import for distribution [CMI] knowing that the [CMI] has been removed or altered without authority of the copyright owner . . .
knowing or . . . having reasonable grounds to know that it will induce, enable, facilitate or conceal an infringement of any right under this title.

CMI is "information conveyed in connection with" a work. 17 U.S.C. § 1202(c). It includes the name of and identifying information about the author of a work. *Id.* § 1202(c)(2). Powers alleges Defendants removed her signature and a copyright symbol from the copyrighted works and replaced them with a notation that said "Caroline's Treasures." She argues this constitutes two DMCA violations regarding CMI—one for removing her CMI and one for adding false CMI.

Neither party has submitted the original images, which were sent electronically to the Defendants in 2002.[1] The only evidence Powers presented that her signature and a copyright symbol were on the images when Defendants received them is her statement that it was her business practice to put them on her copyrighted works. (Resp. at 5; Powers Decl. ¶ 5). Defendants do not contest that a signature and copyright symbol are CMI. Rather they allege they received the images without the signature and copyright symbol on them. Therefore, they could not have removed them. Defendants have also presented website archives showing the alleged CMI missing from the images they posted on their store website while the licensing agreement was still in place. (Mot. at Exh. M-4 & M-5).

---

[1] In Plaintiff's Response, Exhibit C contains the copyrighted works. They contain her signature and a copyright symbol on each page. She does not allege that Exhibit C is the form in which Defendants received the works, but rather that it is her business practice to display her signature with a copyright symbol on the bottom right-hand portion of her artwork. (Resp. at 5).

They argue this shows both that the CMI was not there when Powers gave them the images and, even if it was, it was removed at a time when a licensing agreement was in place. Therefore, it was not removed with the intent to induce, enable, facilitate, or conceal infringement.

Initially, Defendant Knight gave a conflicting account of how Defendants received the images. In a declaration, he said that CTI received the images with Powers' signature on them. (Mot. at Exh. 2 ¶ 14). In the same declaration he said the images filed by Powers in this action "differ from the images CTI received from Powers in that CTI's images did not have any copyright symbol or Powers' signature." (*Id.* at ¶ 15). Defendants' were later granted leave to file a corrected declaration, (Doc. 61), where they removed the portion of paragraph 14 that said each image had Powers' signature on it, (Doc. 62). Knight's initial declaration was also different than Defendant Rutherford's. Rutherford declared CTI received the images with no identifying information other than an electronic file name. (Mot. at Exh. 3 ¶¶ 20–22).

The Court agrees with Defendants that Powers cannot show a genuine issue of material fact regarding whether her signature and a copyright symbol were on the images when they received them and will grant summary judgment regarding Powers claim that Defendants removed CMI from the protected images. In order for a plaintiff to prove a defendant removed her CMI, she must be able to show it was originally "conveyed in connection with" the protected work. 17 U.S.C. § 1202(c); *Personal Keepsakes, Inc. v. Personalizationmall.com, Inc.*, 975 F. Supp.2d 920, 927–29 (N.D. Ill. 2013). A number of courts have held that for CMI to be protected, it must be near, around, or on the original work. *Personal Keepsakes*, 975 F. Supp. 2d at 929 (collecting cases).

Beyond merely removing CMI, the statute also has a "knowing" or "intent" requirement for a defendant to be liable. 17 U.S.C. § 1202(b); *see Chevrestt v. Am. Media, Inc.*, 204 F. Supp. 3d 629, 632 (S.D.N.Y. 2016) (applying 17 U.S.C. § 1202(b)) ("Since there are not factual allegations supporting an inference that [Defendant's] CMI alteration or removal was done intentionally, [Defendant's] motion to dismiss the DMCA claim is

granted[.]"); *see also Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1157 (9th Cir. 2015) (comparing a different section of the DMCA with a "knowingly" requirement to an intentional tort). The CMI must be removed "intentionally," with the remover "knowing, or . . . having reasonable grounds to know, that it will induce, enable, facilitate, or conceal an infringement." 17 U.S.C. § 1202(b)(1).

Both Knight and Rutherford have submitted declarations attesting that Defendants received the images without Powers' signature or copyright symbol. They have also submitted website archives from June 2002 through April 2004 and June 2004 through May 2006 that show Powers' images for sale without a signature or copyright symbol. Powers does not object to the use of the archived website and, in fact, even used those exhibits to argue for her preferred outcome during oral argument. The archived website also shows that, if they did remove CMI, it was done years prior to the alleged infringements *while* they had a valid license to use the images, which undercuts any allegation that the alleged CMI was removed to induce, enable, facilitate, or conceal infringement. The Court finds Defendants' evidence, particularly the images that corroborate their statements that they received the images without her signature or a copyright symbol, persuasive and meets the burden of establishing that there is no genuine issue of material fact regarding whether Defendants removed CMI knowing that it would induce, enable, facilitate, or conceal infringement.

Defendants have met their burden, thus shifting the burden to Powers to establish there is a genuine issue of material fact. Powers fails to do so because she has provided nothing more than bare assertions and uncorroborated, self-serving evidence to refute Defendants' evidence. Powers contends that she sent the original images to Defendants with images that contained her signature and a copyright symbol because it was her business practice to include that on her artwork. Specifically, she said, "To the best of my knowledge, because it was always my standard practice, I included my CMI on all 56 of the Copyrighted Works when I originally sent Defendants my artwork pursuant to the 2002 License." (Powers Decl. ¶ 5). She also attaches the 56 images to her response as Exhibit C.

Those images have her signature and a copyright symbol on each of them, but she does not even go as far as to say that she sent the images as those same files. Instead, she relies on it being her standard practice to add a signature and copyright symbol.

Defendants object to her testimony as inadmissible habit evidence. Even assuming it is admissible, however, it amounts to nothing more than uncorroborated, self-serving evidence. Uncorroborated, self-serving evidences is not enough for a court to "find a genuine issue." *Villarimo*, 281 F.3d at 1061 (internal quotations omitted). Additionally, "bare assertions" are not enough to create a material issue of fact. *Liberty Lobby*, 477 U.S. at 247. Powers has simply not presented significantly probative evidence to prevent summary judgment on the 17 U.S.C. § 1202(b) claim.

2. The DMCA Claim Under 1202(a)—False CMI

Plaintiff asserts a falsification claim under § 1202(a), which requires Plaintiff to establish that Defendants "knowingly and with the intent to induce, enable, facilitate, or conceal infringement—(1) provide[d] copyright management information that is false, or (2) distribute[d] or import[ed] for distribution copyright management information that is false." 17 U.S.C. § 1202(a). Powers alleges that when she discovered her copyrighted works being advertised and sold on third party websites, the works "contained a notation which read 'Caroline's Treasures.'" (Resp. at 7–8). She says this constitutes replacing her CMI with false CMI knowing that it "would induce, enable, facilitate, and/or conceal the infringements of Powers' Copyrighted Works." (Resp. at 8). She attaches screenshots of websites where Caroline's Treasures sold products, such as Alibaba, Ebay, and Amazon, that show Caroline's Treasures as a seller and put it in the description of the item for sale. (Resp. at Exh. H).[2] Powers argues the "Caroline's Treasures" notation constitutes false CMI.

---

[2] For example, one item in Exhibit H is listed on Alibaba as "Carolines [sic] Treasures SP5222GF Basset Hound Dog Country Lucky Horseshoe Flag – Garden Size, 11 x 15 in." Another listing on Amazon leaves out "Carolines Treasures" (though some Amazon listings include it) but it says, "Labrador Yellow Dog Country Lucky Horseshoe Ultra Beverage Insulators for slim cans SP5202MUK." The Amazon listings have "by Carolines Treasures" underneath them.

Section 1202 provides eight different definitions for CMI, and Powers does not explain which one she believes the Caroline's Treasures "notation" falls under. CMI is defined as:

> (c) Definition.--As used in this section, the term "copyright management information" means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user of a work or of a copy, phonorecord, performance, or display of a work:
> (1) The title and other information identifying the work, including the information set forth on a notice of copyright.
> (2) The name of, and other identifying information about, the author of a work.
> (3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.
> (4) With the exception of public performances of works by radio and television broadcast stations, the name of, and other identifying information about, a performer whose performance is fixed in a work other than an audiovisual work.
> (5) With the exception of public performances of works by radio and television broadcast stations, in the case of an audiovisual work, the name of, and other identifying information about, a writer, performer, or director who is credited in the audiovisual work.
> (6) Terms and conditions for use of the work.
> (7) Identifying numbers or symbols referring to such information or links to such information.
> (8) Such other information as the Register of Copyrights may prescribe by regulation, except that the Register of Copyrights may not require the provision of any information concerning the user of a copyrighted work.

17 U.S.C. § 1202(c). Of these definitions, the Caroline's Treasures notation only seems to be a plausible fit for the first three definitions—the title of the work, the name of the author, the copyright owner of the work, or other information identifying the work.

The Court is persuaded that there is a factual dispute about whether the Caroline's Treasures notation is CMI. CMI must be info "conveyed in connection with" a work. This does not necessarily mean CMI must be placed directly upon or affixed to a copyrighted work, but the location of information can determine what it refers to or whether an alleged infringer lacked the required intent. *Banxcorp v. Costco Wholesale Corp.*, 723 F. Supp. 2d 596, 611 (S.D.N.Y. 2010). A number of courts have held that for CMI to be protected, it

must be near, around, or on the original work. *Personal Keepsakes*, 975 F. Supp. 2d at 929 (collecting cases). The notation to Caroline's Treasures is not on the works in question. It is off to the side or underneath and appears to be part of the product description, but it could be interpreted as conveying the title, name of the author, or owner of the work.

Where "Caroline's Treasures" appears in relation to the work is not consistent. In the dozens, perhaps hundreds, of listings provided by Powers, it often appears in the same line as words that describe the products being sold. Sometimes, such as when "by Caroline's Treasures" appears on the Amazon listings, it appears to communicate nothing more than who is selling the item. At other times, "Caroline's Treasures" appears in the title of the item. A viewer of the work could interpret "Caroline's Treasures" as title, author, or owner of the work.

Additionally, though the haphazard manner in which "Caroline's Treasures" was added to the listings makes the Court doubt that Defendants had the intent required by § 1202(a), the Court cannot say so conclusively. *See ICONICs, Inc. v. Massaro*, 192 F. Supp. 3d. 254, 273 (D. Mass. 2016) (explaining that "questions of intent" are "best left for a jury") (citing *Hodgens v. Gen. Dynamics. Corp.*, 144 F.3d 151, 167 (1st Cir. 1998). On some pages of listings provided by Powers, "Caroline's Treasures" does not appear at all. On some, it only appears in the product listing, and on others it is in the product listing in addition to Caroline's Treasures being listed as the seller. Defendants were using "Dog Country," the same name they used when the parties signed the first licensing agreement in 2002. If Defendants really were intentionally trying to induce, enable, facilitate, or conceal infringement, it would be a strange choice to retain the name that they used when they first began their business relationship with Powers. Nevertheless, that is a factual issue for a jury to resolve and the Court will not grant summary judgment with regard to Plaintiff's false CMI claim.

3. <u>Breach of Contract and Implied License</u>

Defendants contend that the parties' established course of conduct and their payment of royalties after the expiration of the 2006 License establish that they had an

- 10 -

implied license to continue using Powers' drawings and did not breach the agreement. "A copyright owner may grant a nonexclusive license expressly or impliedly through conduct." *Field v. Google, Inc.*, 412 F. Supp. 2d 1106, 1115 (D. Nev. 2006) (citing *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558–59 (9th Cir. 1990). "Consent to use the copyrighted work need not be manifested verbally and may be inferred based on silence *where the copyright holder knows of the use and encourages it*." *Id.* (emphasis added). Some courts have called the implied consent doctrine "narrow" and required a defendant to "prove there was a meeting of the minds." *Ulloa v. Universal Music & Video Distrib. Corp.*, 303 F. Supp. 2d 409, 416 (S.D. N.Y. 2004) (citing *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharmaceuticals, Inc.*, 211 F.3d 21, 25 (2d Cir. 2000)). The Ninth Circuit has found implied license when a party creates a work at the request or in partnership of the defendant. *Effects Assocs.*, 908 F.2d at 558; *Oddo v. Ries*, 743 F.2d 630, 632 (9th Cir. 1984).

As *Ulloa* notes, the "meeting of the minds" issue must be addressed under state contract law. *See also Foad Consulting Group, Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir 2001) ("Thus, so long as it does not conflict with the Copyright Act, state law determines whether a copyright holder has granted [an implied copyright] license."). The parties did not have a choice-of-law provision in their licensing agreement, but they agreed at oral argument that Arizona law applies when interpreting the agreement.[3] Therefore, whether the course of conduct established that Powers conveyed an implied license and whether Defendants breached the contract are essentially the same analysis.

The Court is not convinced by Defendants' argument that the facts show they are entitled to an implied license as a matter of law. "The terms of a contract may be expressly stated or may be inferred from the conduct of the parties." *Beaudry v. Insurance Co. of the*

---

[3] This comports with our precedent. "A federal court ordinarily applies the choice-of-law rules of the state in which it sits." *Consul Ltd. v. Solide Enter.*, 802 F.2d 1143, 1146 (9th Cir. 1986). Arizona applies the "most significant relationship" test from the Restatement (Second) of Conflict of Laws. *See Bates v. Super. Ct.*, 749 P.2d 1367, 1369 (Ariz. 1988). Under this test, the law of the state that has the most significant relationship to an issue will apply to that issue. *Id.* Plaintiff lived here when she entered into the agreement to license the copyrighted works, lives here now, and received payments to her Arizona address.

*West*, 50 P.3d 836, 839 (Ariz. Ct. App. 2002). "The general rule is that the determination whether in a particular case a promise should be implied in fact is a question of fact. Where reasonable minds may draw different conclusions or inferences from undisputed evidentiary facts, a question of fact is presented." *Wagenseller v. Scottsdale Memorial Hosp.*, 710 P.2d 1025, 1038 (Ariz. 1985) (internal citations omitted), *superseded in other respects by* A.R.S. § 23-1501.

Here, both the 2002 License and 2006 License had the same renewal clause, which allowed renewal in one-year increments if both parties agreed. Prior to the last expiration, there had only been one previous lapse. During that time, the parties continued in the normal course of business before re-upping the contract a little over two years later. Moreover, during the second license, Powers expressed frustration with the contract and threatened to terminate the relationship. After the 2006 License lapsed, Defendants heard from Powers only one or two times, the last time being in November 2009. After that, there was no contact between the parties for almost eight years. Reasonable minds could draw different conclusions about whether the parties agreed to renew their contract after the 2006 License lapsed. Therefore, summary judgment is not granted to Defendants on this claim.

4. <u>Notice and Statute of Limitations for the Copyright Claims</u>

Defendants argue Powers is barred by the statute of limitations from collecting any damages that occurred more than three years prior to the commencement of this suit. *See* 17 U.S.C. § 507(b). Powers argues the statute of limitations was tolled until she discovered the allegedly infringing products in June 2017. Defendants counter that Powers was on notice because it was unreasonable that she would not be aware of the continued use of her copyrighted works. For the reasons below, the Court finds that summary judgment is precluded by factual disputes.

"A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994). The "general rule" is that a "'plaintiff's right to damages is limited to those suffered during the statutory period for bringing claims.'" *Polar Bear Prod.*

*v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (quoting *Los Angeles News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 992 (9th Cir. 1998)). A plaintiff's claim will not accrue if her "lack of knowledge was reasonable under the circumstances." *Id.* If a plaintiff, however, could have learned of a cause of action "by reasonable diligence," the statue of limitations is not tolled. *Id.* (quoting *Taylor v. Meirick*, 712 F.2d 1112, 117 (7th Cir. 1983)).

Defendants argue Powers knew or should have known of her potential claims as early as November 2009 when she received the check for royalties that noted they were for October 2008 to October 2009. She also was aware of how Defendants treated the previous lapse in the licensing agreement. Defendants seemingly have continued selling the copyrighted works since the 2006 License lapsed in 2008 without a change in their business name nor in what they called the product. They argue that through reasonable diligence, Powers would have learned of the alleged infringement.

Plaintiff presented evidence that she believed the last check only constituted payment for the end of the license term and she believed that the agreement was terminated. Her evidence is supported by her changed behavior after the 2006 License lapsed, as she did not continue requesting payment from Defendants after November 2009. The question of whether Plaintiff's claim accrued in 2009 or in 2017 is properly presented to the jury. *See Design Basics, LLC v. Forrester Wehrle Homes, Inc.*, 305 F. Supp. 3d 788, 795 (N.D. Ohio 2018) (finding a fact issue as to whether company had reason to know of customer's infringing conduct precluded summary judgment on issue of whether company was on inquiry notice to trigger limitations period); *Ranch Realty, Inc. v. DC Ranch Realty, LLC*, 614 F. Supp. 2d 983, 989 (D. Ariz. 2007) ("When discovery occurs and a cause of action accrues are ordinarily questions of fact for the jury."). Whether Powers exercised "reasonable diligence" is also a question for the jury. *Cf. E.W. French & Sons, Inc. v. General Portland, Inc.*, 885 F.2d 1392, (9th Cir. 1989) (jury question existed as to whether plaintiff "exercised the requisite diligence" in attempting to discover operative facts of alleged price-fixing conspiracy). Accordingly, the Court will not grant Defendants' motion for summary judgment with regard to the statute of limitations.

### 5. Rutherford and Knight's Contract Liability

Defendants Knight and Rutherford argue they should be granted summary judgment in their personal capacity on the breach of contract claim. Powers responds by arguing that a finder of fact can reasonably find that Knight and Rutherford are joint infringers or are vicariously liable for copyright infringement, breach of contract, and violations of the DMCA. Powers misunderstands Knight and Rutherford's narrow argument. They are merely arguing they cannot be personally liable for only the breach of contract claim because they were not parties to the 2002 and 2006 Licenses.

Knight and Rutherford are correct. The standard for veil piercing is well-settled in Arizona:

> "A basic axiom of corporate law is that a corporation will be treated as a separate entity unless there is sufficient reason to disregard the corporate form." *Standage v. Standage*, 711 P.2d 612, 614 (App. 1985). As a separate entity, the personal assets of a corporate officer may not normally be reached to satisfy corporate liabilities. *Id.* at 615. A corporate entity will be disregarded, and the corporate veil pierced, only if there is sufficient evidence that 1) the corporation is the "alter ego or business conduit of a person," *Dietel v. Day*, 492 P.2d 455, 457 (1972); and 2) disregarding the corporation's separate legal status is "necessary to prevent injustice or fraud." *State v. Angelo*, 800 P.2d 11, 14 (App.1990).

*Loiselle v. Cosas Mgmt. Grp., LLC*, 228 P.3d 943, 950 (Ariz. Ct. App. 2010). Powers has presented no evidence to meet this standard, and all indications are that Knight and Rutherford's business does not serve as their alter ego and it is not necessary to pierced to prevent injustice or fraud. Therefore, the Court will grant Defendant Knight and Rutherford's motion for summary judgment regarding the breach of contract claim.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** granting in part and denying in part Defendants' Motion for Summary Judgment (Doc. 43):

1. Defendants' motion for summary judgment on the DMCA claims is **GRANTED IN PART**. The motion is granted as to the claim based on § 1202(b), the motion is denied as to the claim based on § 1202(a);

2. CTI's motion for summary judgment on breach of contract and copyright infringement is **DENIED**;
3. Defendants Knight and Rutherford's motion for summary judgment on the copyright infringement claim is **DENIED**;
4. Defendants Knight and Rutherford's motion for summary judgment on the breach of contract claim is **GRANTED**.
5. Defendants' motion for summary judgment on the statute of limitations is **DENIED**.

Dated this 10th day of April, 2019.

_____
Honorable Susan M. Brnovich
United States District Judge